## STANLEY v. PAJARO VALLEY BANK.

(Circuit Court of Appeals, Ninth Circuit. May 6, 1912.)

### No. 2,043.

BANKRUPTCY (§ 166*)—VOIDABLE PREFERENCE.

The collection of a note by a bank by means of an attachment suit and sale of the attached property on execution within four months prior to the bankruptcy of the maker *held* on the evidence not collusive nor to constitute a voidable preference, it appearing from stipulated facts that the bankrupt was conducting a mercantile business and stated when he borrowed the money for which the note was given that the amount would pay all of his other creditors and that the reason for the attachment was that he was removing his stock of goods from the state; and there being no evidence showing directly or by fair inference that the bank had knowledge of any other creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250-258; Dec. Dig. § 166.*]

Appeal from the District Court of the United States for the Northern District of California.

Suit in equity by George F. Stanley as trustee of the estate of E. L. Newman, bankrupt, against the Pajaro Valley Bank. Decree for defendant and complainant appeals. Affirmed.

E. L. Newman was engaged in business, conducting a harness and saddlery store at Watsonville, Cal. On June 30, 1908, he borrowed of the Pajaro Valley Bank, the appellee herein, the sum of $300 on his representation that he wished to use the money to discount some bills, and that his stock was worth $3,800. The stock was inspected by an officer of the bank, and its valuation was roughly checked at the time when the loan was made. Newman executed a note to the bank payable one day after date. On August 31, 1908, he borrowed from the bank the further sum of $500 on a similar note, he stating to the bank at that time that this amount would pay all his creditors and leave him indebted only to the bank. At that time his stock of goods was practically in the same condition as when the first loan was made. Checks went through the bank using these moneys so loaned for the payment of bills of Newman due to wholesalers. In the latter part of October, 1908, the cashier of the bank went to Newman's store to buy a set of harness, and he noticed that the stock had been very materially depleted since the time of the last loan. He made inquiries on the outside, and was informed that Newman had been shipping stock away, and was intending to remove to Honolulu. He immediately caused formal demand to be made on Newman for the payment of the notes. Newman failed to comply, but he at no time informed the bank or any of its agents that he had any creditors other than the bank. Neither the bank nor any of its agents ever had any information as to the existence of other creditors until bankruptcy proceedings were commenced on January 20, 1909, and they at all times up to the commencement of those proceedings believed there were no other creditors of Newman. On October 27, 1908, the bank without further warning to Newman commenced an action on its notes, and on the following day caused an attachment to be levied on his stock. For the purpose of saving the cost of keeper's fees which were $6 per day, the bank's attorneys proposed to Newman's attorney to reduce the bank's claim for attorney's fees against Newman from $125 to $50 if Newman would go to trial immediately. This was agreed to, and on October 29th, Newman filed an answer. The case was tried the same day, and judgment was entered in favor of the bank for the amount of its debt and $50 attorney's fees and costs. Execution was immediately levied on Newman's stock at the request of the bank, and the stock was sold at sheriff's sale on November 5, 1908. On the following day the bank's judgment was paid and satisfied, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the surplus of the proceeds of the sale, $5.14, was paid to Newman by the sheriff. The goods were sold for $1,050, which, it is stipulated, was their actual value. Newman was adjudged bankrupt upon the petition of his creditors, and thereafter, on March 23, 1911, his trustee brought a suit in equity in the court below against the appellee herein to recover the stock so sold under execution upon the judgment obtained by the bank. The trustee filed its answer, and the cause was tried by the court upon an agreed statement of facts, which are the facts hereinabove recited. Upon the agreed statement of the facts and the documentary evidence introduced on the trial, the court below found that the judgment of the appellee against the bankrupt was not collusive, and was not obtained by it for the purpose of hindering, delaying, or defrauding any creditor of the bankrupt, and that the appellee did not have, prior to the execution sale, reasonable cause to believe that the enforcement of such judgment would operate as a preference over other creditors of such bankrupt. Thereupon judgment was entered for the appellee.

Samuel T. Bush, of San Francisco, Cal., for appellant.
H. C. Wyckoff, of Watsonville, Cal., for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). It is contended that, on the agreed statement of the facts, the court erred in finding that the judgment obtained against the bankrupt was not collusive, that the appellee had no reasonable cause to believe that the bankrupt intended to give it a preference, that the judgment was not intended as a preference to the appellee, and that its enforcement will not operate as a preference over other creditors. There is no evidence in the case other than the agreed statement of the facts which have been above recited, and certain documentary proofs which appear to have been introduced in evidence, and which are not embodied in the record, and may be assumed to be the promissory notes on which the judgment was rendered. It is argued that the bank must have known that the bankrupt had other creditors from the fact that the moneys which it loaned him it subsequently paid out on his checks to certain wholesale dealers, and that, having that knowledge, it knew enough to put it upon inquiry to ascertain who the creditors were. But the fact was that at the time when the second loan was made the bankrupt stated to the appellee that the amount so borrowed would be sufficient to pay all his creditors. No reason is suggested why the officers of the bank should not have believed that statement. But it is said that, when it was discovered that a portion of the bankrupt's stock had been shipped to Honolulu, the knowledge of that fact was sufficient to advise the bank that the bankrupt must have had other creditors, the payment of whose claims he was endeavoring to avoid. But the officers of the bank might with equal reason have assumed that it was the bank that the bankrupt was endeavoring to defraud; that, having obtained $800 from the bank, he had devised a scheme to avoid the payment thereof by secretly shipping his goods to Hawaii.

Again, it is argued that the fact that the bank levied an attachment should be taken as indicating that it desired to obtain a preference and subject the property to the payment of its own debt to the exclusion of other creditors. But the action of the bank is very reasonably sustained on the theory that it feared, as it had reason to fear,

that, unless the remaining property was attached, the bankrupt might carry out his plan of removing all of the stock from the state of California, and beyond the reach of the process of the courts of the state.

It is claimed that there is evidence of collusion, and that a preference was intended in the fact that the bankrupt consented to an immediate trial, instead of leaving the cause to pursue the ordinary course. But it is evident that the bankrupt had no defense to the action, and had nothing to gain by prolonging the litigation. On the contrary, it was clearly to his advantage to put an end to the costs of keeper's fees, and to reduce his liability for attorney's fees, and to the argument that, if judgment and execution had been delayed, the bankrupt's stock of goods might have sold at a higher price, the complete answer is the stipulation between the parties that the goods when they were sold were sold for their full value. There is no proof before us that at the time when the attachment was levied, or at the time when the goods were sold on execution, there were any other creditors of the bankrupt, except such proof thereof as may be afforded by the presence in the record of a copy of the petition of creditors for his adjudication as a bankrupt, in which petition it is alleged that he was indebted in about the sum of $1,000.

We find no merit in the appeal. The decree is affirmed.